IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 12-cv-01788-RBJ

RAYMOND A. MINCK, III,

    Plaintiff,

v.

BNSF RAILWAY COMPANY, a corporation,

    Defendant.

## ORDER

This matter is before the Court on defendant's motion for summary judgment based upon the running of the applicable statute of limitations [docket #19]. The Court finds that the statute of limitations issue in this case turns on genuinely disputed issues of material fact, and therefore, the motion is denied.

**Facts**

Raymond A. Minck, III worked has worked for BNSF Railway Company since 1976, first as a conductor from 1976 to 1994, and then as a locomotive engineer from 1994 forward. Mr. Minck alleges that operating locomotives during his long career with BNSF has cumulatively caused various low back and lower spine injuries.

In April 2004, Mr. Minck began noting to his primary care physician, Dr. Lawrence Anaya, that he had pain down his right leg and buttocks. Anaya Dep., [#20-1] at 14:17–21. Dr. Anaya then prescribed medication, physical therapy, and an MRI, and also referred Mr. Minck to

an orthopedic specialist, Dr. James Bee. *Id.* at 16:3–17:7. On June 9, 2004, Mr. Minck visited Dr. Bee with pain in his right leg after "after a particularly hard day at work". [#19-3] at 1.

In August 2006, Mr. Minck's pain began to increase after he "tweaked" his back, but Mr. Minck was unable to pinpoint a specific incident that caused the increased pain. Minck Dep., [#20-2] at 177:16–179:7. Due to the pain, Mr. Minck requested medical leave from work in September 2006. *See* [#21-2].

In May 2007 Mr. Minck underwent back surgery with Dr. Gary Ghiselli and returned to work in August 2007. *See* [#21-2]. He worked without incident until 2010 when his pain began to feel "different." [#20-2] at 204:16–205:7. He then began treatment in 2011 with Dr. Jeffrey Kleiner, an orthopedic surgeon, who explained that his back pain may be attributed to his work. *See id.* at 214:1–17; 258:2–259:3; *see also* [#21] at ¶ 16.

Mr. Minck filed this action against BNSF on July 10, 2012, alleging that (1) BNSF negligently failed to provide a safe workplace in violation of the Federal Employers' Liability Act (FELA), and (2) BNSF exposed Mr. Minck to defective and unsafe locomotives during his career in violation of the Locomotive Inspection Act (LIA).

**Standard of Review**

"Summary judgment is appropriate 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1050 (10th Cir. 2008) (quoting Fed. R. Civ. P. 56(c)). When deciding a motion for summary judgment, the Court considers "the factual record, together with all reasonable inferences derived therefrom, in the light most favorable to the non-moving party . . . ." *Id.* When the movant does not have the ultimate burden at trial, it

may succeed on a motion for summary judgment when it has shown the court that there is an absence of evidence to support the nonmoving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In challenging such a showing, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**Conclusions**

The FELA "permits railroad workers to recover for injuries caused by the negligence of their employers or fellow employees." *Matson v. Burlington N. Santa Fe R.R.,* 240 F.3d 1233, 1235 (10th Cir. 2001). However, the action must be "commenced within three years from the day the cause of action accrued." 45 U.S.C. § 56).[1] Mr. Minck's cause of action therefore is time barred if it accrued before July 10, 2009—three years before July 10, 2012 when he filed this lawsuit.

The FELA does not specify when a cause of action is considered to have accrued. The accrual date might be obvious in some cases, such as those which "involve a traumatic injury or a single breach of duty and an immediately manifest injury." *Nat'l R.R. Passenger Corp. v. Krouse,* 627 A.2d 489, 493–94 (D.C. App. 1993). However, Mr. Minck alleges that his injuries resulted from an accumulation of insults that his body sustained over the years that he rode in a locomotive. In cases where injuries may not manifest themselves immediately, the "statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and

---

[1] The limitations analysis applicable to plaintiff's FELA claim also applies to his LIA claim. "Because LIA does not create an independent cause of action, such a claim must be brought under FELA." *Matson,* 240 F.3d at 1235.

cause of the injury which is the basis of the action." *Indus. Constructors Corp. v. United States Bureau of Reclamation,* 15 F.3d 963, 969 (10th Cir. 1994). This rule "imposes upon plaintiffs an affirmative duty to exercise reasonable diligence and investigate the cause of a known injury." *Matson,* 240 F.3d at 1235.

Accordingly, this "discovery rule" has two parts: knowledge of the existence of the injury itself, and knowledge of the cause of the injury. "Both components require an objective inquiry into when the plaintiff knew or should have known, in the exercise of reasonable diligence, the essential facts of injury and cause." *Fries v. Chicago & Nw. Transp. Co.*, 909 F.2d 1092, 1095 (7th Cir. 1990)(cited by the Tenth Circuit in *Robinson v. BNSF Railway Co.,* 412 F. App'x 113, 116 (10th Cir. 2011).

As to the existence of the injury, "when an injury results from repeated exposure to a deleterious condition, a plaintiff's FELA cause of action accrues 'only when the accumulated effects of the deleterious [condition] manifest themselves.'" *Id.* (quoting *Urie v. Thompson,* 337 U.S. 163, 170 (1949)). Manifestation of an injury, however, does not impute knowledge of "the precise nature or medical origin of the injury" to the plaintiff. *Robinson,* 412 F. App'x at 116. Rather, a plaintiff is deemed to be aware of an injury "once he or she has been apprised of the general nature of the injury. Lack of knowledge of the injury's permanence, extent, and ramifications does not toll the statute." *Id.* (quoting *Gustavson v. U.S.,* 655 F.2d 1034, 1036 (10th Cir. 1981)).

As to the cause of the injury, the plaintiff must "know or have reason to know 'his injury is merely work related.'" *Robinson,* 412 F. App'x at 116 (quoting *Matson*, 240 F.3d at 1236). Other courts have noted that this determination of what the plaintiff knew or should have known is a quintessential fact question and is ordinarily one for a trier of fact. *See, e.g.*, *Granfield v.*

*CSX Transp., Inc.*, 597 F.3d 474, 482 (1st Cir. 2010) ("We have reiterated that application of the discovery rule ordinarily involves questions of fact and therefore in most instances will be decided by the trier of fact."); *Nichols v. Burlington N. & Santa Fe Ry. Co*., 56 P.3d 106, 109 (Colo. App. 2002).

BNSF argues that the evidence is uncontroverted that Mr. Minck knew, or using reasonable diligence should have known as early as 2004, that his back pain was caused by his work. Viewing the evidence in the light most favorable to the non-moving party, however, Mr. Minck has submitted sufficient evidence to create a genuine factual dispute as to his knowledge of the extent of his injuries and their cause. For example, a "progress note" by Dr. Anaya on April 26, 2004 indicates that Mr. Minck at the time did not "recall anything specific that may have brought [his injuries] on." [#19-2]. In June 2004, although Dr. Bee noted that the onset of Mr. Minck's pain "was after a particularly hard day at work when he had to manually crank sixty cars into position" and when the work day "also included approximately seven miles of walking," his notes also suggest this was an isolated incident. [#19-3] at 1 (notes that Mr. Minck "denies any history of a previous incident like this"). Dr. Bee's prescribed "plan" did not mention any work-related corrections. *Id.* at 4. Mr. Minck stated at his deposition that although he made the "assumption" that the back pain he was experiencing was from a "hard day" at work, he believed that he "just felt fatigued," not that he was more permanently injured. Minck Dep. [#20-2] at 174:5–18. *See* Minck Aff. [#21-1] ¶ 6.

Forms submitted by Mr. Mink in 2006 also suggest that he might not have understood what the cause of injury was. On September 26, 2006 he completed a "BNSF Railway Medical Status Form for *Non Work Related* Medical Conditions." [#21-2] at 1 (emphasis added). On October 13, 2006, Mr. Minck indicated on an Application for Sickness Benefits form that he was

5

not "applying for benefits because [he was] injured at work or [had] a work-related illness." [#21-1]. *See also* January 6, 2007 Patient Information Form, [#19-6] at 2 (indicating Mr. Minck's disagreement with the statement that "work may harm [his] back").

It does not appear from what is in the record of the case at this point that Mr. Minck's doctors informed him that his pain and injuries were caused by the conditions of his work until Dr. Kleiner did so in 2011. Minck Aff., [#21-1] ¶ 11. Mr. Minck states, "I believed if my treating doctors felt my railroad work had caused me to be injured, I would not have been released back to work at the same job." *Id.*

BNSF suggests that despite this, Mr. Minck failed to act with reasonable diligence to discover his injuries or the cause of them. BNSF correctly points out that the inquiry is objective—not a subjective one based on what Mr. Minck actually knew. *Cf. Arvayo v. United States*, 766 F.2d 1416, 1422 (10th Cir. 1985) (applying the discovery rule in a statute of limitations challenge under the Federal Tort Claims Act). Furthermore, BNSF is correct that Mr. Minck's doctors have no affirmative duty to disclose the cause, if any, of the injuries as Mr. Minck reported them, but that there is a duty on Mr. Minck himself to act reasonably in his inquiries. *See id.* However, the Court is not convinced that as a matter of law a reasonable person in Mr. Minck's position had a duty to inquire *further* than he did in 2004, 2006, or 2007. *Id.* (untimely action where plaintiffs did not act reasonably to make "*some* type of inquiry" when receiving "drastically different diagnoses in a twenty-four hour period, with the concomitant likelihood of brain damage").

**Order**

Because application of the discovery rule in this case involves questions of fact that are genuinely disputed, defendant's motion for summary judgment [#19] is DENIED.

DATED this 26th day of July, 2013.

BY THE COURT:

*[signature: Brooke Jackson]*

_____
R. Brooke Jackson
United States District Judge